HANTZ administrator cum test. annex. of SEALY
*against* SEALY.

IN ERROR.

1814.

*Lancaster,*
*Monday,*
*May 23.*

THIS was an action of assumpsit in the Common Pleas of *York* county, brought to *August* Term 1807, by *Mary Sealy* the plaintiff below, to recover the amount of the personal estate of *Henry Sealy* her late husband, bequeathed to her by his will. The *Narr* contained also a count for money had and received. The defendant pleaded; 1. Non assumpsit; 2. Payment; 3. That the plaintiff was his wife.

Upon the trial of the cause, the plaintiff's counsel, in support of the *first issue,* offered in evidence the will of *Henry Sealy* dated the 21st of *March* 1798, and certified by the Register of *York* county to have been duly proved by the oaths of the subscribing witnesses, on the 12th of *April* 1798. To this the defendant's counsel objected, and produced to the Court in support of their objection: 1. The record of an appeal by *Henry Hull* and another, made on the 25th of *June* 1799, to the Register's Court of *York* county, from all acts and decrees of the Register relative to the will in question: 2. An order of the Register's Court on the 4th of *December* 1799, directing an issue of *devisavit vel non* in the Common Pleas of *York:* 3. The record of the trial, verdict, and judgment in favour of the will, in the Circuit Court in *May* 1802: and 4. The record of an appeal from that judgment to the Supreme Court, and the final confirmation of the will in *May* 1810, more than two years after this suit was commenced. The counsel for the plaintiff then gave in evidence that on the 12th of *April* 1798, letters of administration with the will annexed *pendente lite* were granted to *Boreas Fahnestock,* who settled his account in the Orphan's Court of *York* county on the 22d of *September* 1802, and obtained his discharge on paying over the balance of 4334*l.* 14*s.* 3½*d.* remaining in his hands, part in cash and part in bonds and notes &c. to the defendant *Hantz,* who on the 24th of *September,* obtained letters of administration *de bonis non cum testamento annexo,* and received the balance accordingly. The plaintiff's counsel also gave in evi-

*Marriage is a civil contract, which may be completed by any words in the present time without regard to form: but if a man says to a woman, "I take you for my wife," and the woman answers, "to be sure he is my husband," "good enough," referring to a past illegal marriage and cohabitation, this is no marriage.*

*An executor is not liable to an action for a legacy while the probate of the will is suspended by appeal; nor will an action commenced during that period, acquire validity by the subsequent confirmation of the will.*

*In an action of debt or on the case against an executor for a debt due from the testator, the plea of non est factum or non assumpsit is an admission of a will of which the defendant is executor: secus, where the action is for a demand on which the testator was not liable, as for a legacy.*

dence that *Hantz* was plaintiff in the feigned issue in the Circuit Court, and that on the 25th of *May* 1805, after the appeal by the defendants in that suit to the Supreme Court, he treated the appeal as if it had been abandoned, and issued execution for the costs, and received them. From this, and the acceptance of the administration it was inferred that *Hantz* was estopped from alleging that the paper in question was not the will of *Sealy,* or that the appeal was subsisting when this suit was commenced.

Upon the whole matter, the two assistant judges against the opinion of the President, admitted the will, and sealed a bill of exceptions.

Upon the *second* issue of payment, there was no evidence.

Upon the *third,* it was proved that a marriage took place between the plaintiff and defendant before a clergyman in the month of *January* 1799; that he and she had given receipts by the name of *Jacob* and *Mary Hantz;* that they cohabited as man and wife, had children, and had executed deeds for land, in which she was stiled his wife, and had acknowledged them as such. At the time of this marriage it was however perfectly clear, that the defendant had another wife living, from whom he had been separated according to his own notion effectually, but without any effect whatever in law. A legal divorce was afterwards obtained, and *Hantz* and Mrs. *Sealy* having come to Mr. *Watts* their counsel on business, he advised them to celebrate a new marriage. *Hantz* then said, "*I take you* (the plaintiff) *for my wife;*" and the plaintiff being told that if she would say the same, it would be a complete marriage, she replied, "*to be sure he is my husband good enough.*" Mr. *Watts* advised them to repeat the marriage in a solemn manner before a clergyman, and he thought they went out for that purpose; but it was never done.

The matters objected by the defendant were; 1. The marriage, which was said to be proved both by the ceremony before Mr. *Watts,* and by the cohabitation and acts of the parties. 2. That no express promise having been proved, the action of assumpsit would not lie upon an implied promise, until after a settlement of the administrator's account, and an order of distribution by the Orphan's Court. 3. That if a promise might be implied before, at all events it could

not be until it was the defendant's duty to pay, in other words until the will was established; of course the action was premature. 4. That the greater part of the property being in bonds and notes, the plaintiff could not recover the amount of these in an action for money had and received, because she had not proved their conversion into money. 5. That no refunding bond had been filed before the suit was brought.

The President charged the jury; 1. That as to the cohabitation and acts of the parties, they did not amount to a marriage, but were facts from which a marriage might be inferred. They were circumstances on which to ground a presumption of marriage, and might be met by circumstances, shewing that they were founded on some fact unconnected with marriage. As for instance, if the cohabitation was merely the consequence of the marriage before the clergyman, which was clearly void, and if the acknowledgments referred entirely to the fact of that marriage, then they could not be considered as referring to any other marriage, nor have any weight in proving the marriage contended for. These facts would entirely destroy the presumption of a legal marriage, that would otherwise arise from the cohabitation and acknowledgments; and the jury were to decide upon them. As to the marriage before Mr. *Watts*, there was no doubt that marriage in *Pennsylvania* was so far a civil contract, as to be governed by the municipal laws of the state, viz. the statute and common law, without the intervention of any spiritual or ecclesiastical law, as in *England*. There was no particular form of ceremony established by the law of *Pennsylvania* which was to govern in all cases: but marriage was a very important and solemn institution, and the manner in which it was to be contracted, ought to be suitable to the nature and importance of the engagement. It was not absolutely necessary to be done before a clergyman, or a magistrate; but it ought to be entered into with consideration and deliberate assent, and ought to be done formally and solemnly. The Court did not think it necessary to lay down any rule as to what form and ceremonies might be requisite to form a marriage; but they were decidedly of opinion, that the facts which occurred before Mr. *Watts* did not constitute a legal marriage. 2. That

where assets were in the hands of an executor, the law would imply a promise before a settlement of accounts and an order of distribution. 3. That as to the effect of the will, it had already been decided by a majority of the Court, in receiving it as evidence. 4. That the jury should be satisfied that the amount claimed had been received by the defendant before the commencement of the suit; but that the jury might presume this as well as any other fact from the evidence. Direct proof was not necessary. 5. That the want of a refunding bond should have been objected on the return of process or in a plea in abatement, and that it was now too late.

To this charge an exception was taken, and all the points that were urged below, were now argued in this Court, by *Montgomery* and *Duncan* for the plaintiff in error, and by *Bowie* and *Hopkins* for the defendant in error.

TILGHMAN C. J. In the assignment of errors, several exceptions are taken to the charge delivered by the President of the Court of Common Pleas, of which it is necessary to take notice; but the main ground of defence is, that the plaintiffs could not support an action, until the validity of the will was finally decided.

The defendant pleaded that he was married to the plaintiff, on which issue was joined, and it was objected that the judge ought to have directed the jury that the evidence proved the marriage. The judge laid down the law correctly. He told the jury that marriage was a civil contract, which might be completed by any words in the present time without regard to form. He told them also, that in his opinion the words proved did not constitute a marriage, and in this I agree with him. The plaintiff and defendant came to their lawyer Mr. *Watts* on business, without any intention of marrying. They had long lived in an adulterous intercourse, although they considered themselves as lawfully married. In fact they had entered into a marriage contract which was void, because the defendant had a former wife living, from whom he had been separated by consent but not legally. Some time before the parties came to Mr. *Watts*, a legal divorce had been pronounced, and Mr. *Watts* advised them to celebrate a new marriage. The defendant said, " I take

"you (the plaintiff) for my wife," and the plaintiff being told that if she would say the same thing the marriage would be complete, answered, " to be sure he is my husband good " enough." Now these words of the woman do not constitute a present contract, but allude to the past contract, which she always asserted to be a lawful marriage. Mr. *Watts* advised them to repeat the marriage in a solemn manner before a clergyman, which was never done. So that under all circumstances, it appears to me, that what was done was too slight and too equivocal to establish a marriage.

2. Part of the personal estate which had come to the hands of the defendant was cash, and part bonds, notes &c. The defendant contended that this action for money had and received for the use of the plaintiff, could not be supported without proof of the money having come to his hands. The law is so, and in looking at the judge's charge, I find that he so declared it, but told the jury, that although there was no express evidence of the receipt of the money, yet they would be justified in concluding that it was received, if they were satisfied that such was the fact by circumstantial evidence. The charge therefore was right. If the jury drew a wrong conclusion, it is not for this Court to rectify it.

3. The remaining exceptions may be reduced to one, viz. whether the law raised an assumption to pay the money in the hands of the defendant under the circumstances of this case. In considering it, we must take the case as it stood at the commencement of the action; for if there was no assumption then, nothing which has happened since can alter it.

The plaintiff's claim is founded solely on the will of her husband, and the only evidence of that will which the law admits, so far as concerns personal property, is a probate in the register's court, to which an appeal had been made from the act of the register individually in admitting the will to probate in the first instance. The decree of the register's court was suspended by the demand of an issue to try the validity of the will, and it is enacted by the act of 13th *April* 1791, that the verdict returned to the register's court on that issue shall be conclusive. When this action

was commenced the issue was not finally decided, because although a verdict had been taken, and judgment entered in the Circuit Court, there was an appeal to the Supreme Court, which held the validity of the will in suspense. The verdict had not been returned to the register's court, nor could it be returned until the appeal was decided; for upon that decision it depended, whether the verdict should stand or a new trial be had. In this situation the plaintiff brings her action, founded on implication of law, for no actual promise is pretended. I enter not into the question, whether any kind of action can be supported but that pointed out by the act " for the more easy recovery of legacies;" but will take for granted for the present that where the law enjoins payment of money, it raises a promise to pay. What was the duty enjoined by law on the defendant? He was bound to pay the debts of the deceased as far as the assets extended, because the propriety of paying them did not depend on the will. Debts must be paid, will or no will. But it was not the duty of the defendant to pay any thing, which depended on the will, until it was decided whether the will existed. On the contrary such payments would be at his own peril. It is very clear that if a legacy had been paid, and the issue had been finally decided against the will, the defendant would have been responsible. The plaintiff's argument then leads to this; that although the law does not require payment, and prudence forbids it, yet the law raises an assumption to pay. The conclusion being palpably false, the assumption falls to the ground, and therefore the action cannot be supported.

But it has been strongly urged on the part of the plaintiff, that the plea of non-assumpsit was a confession that there was a will, of which the defendant was executor. In proof of this, cases were cited which show, that in actions of debt or on the case against an executor for a debt due from the testator, the plea of *non est factum* or *non assumpsit* is an admission of a will, of which the defendant is executor; but those cases are widely different from the present. *There* the matter put in issue was, whether the testator made the assumpsit, or whether the bond was the deed of the testator. Consequently the will not being denied, was admitted. But *here* the action is not for a demand on which the testator

was liable, and the plea of *non assumpsit* applies to the defendant and not to the testator. Under this plea the defendant may give every matter in evidence which shows either that he made no assumption before the suit brought, or that the demand was extinguished before the suit brought. Supposing upon this issue it had been *proved expressly*, that the plaintiff had a cause of action, but that it did not arise until after the commencement of the suit. Surely he could not have recovered. Now that is the very case appearing on this record. Whenever the will was finally established, the law raised an assumption; but that was not till after the commencement of the action. I am therefore of opinion that the judgment should be reversed.

YEATES J. after stating the facts at large, delivered his opinion.

I consider the exception taken to this suit as brought prematurely, to be fatal. Upon this point I wholly concur with the President. The objection was founded on the probate of the will by the register, the operation of whose sentence remained in suspense, while the issue taken upon the validity of the will was pending and undetermined. The defendant in error relied on this probate only, and did not adduce the witnesses to the will, nor account for their non-attendance. Until the will was finally determined on, the executor or administrator with the will annexed was under neither a legal nor moral obligation to pay the legacies devised. If he made such payments, and the validity of the will should be afterwards established in the *dernier resort*, he would risk his own property. No debt due from the testator was sought for, but a demand flowing from his bounty. Whether he had been thus bountiful or not, formed a material subject of inquiry. The cause of action arose on the will itself; and on the plea of non-assumpsit, every species of defence is open to the defendant. It is fully settled, that on this issue, every thing may be given in evidence which shows that the plaintiff has no right to recover, except *perhaps* a general release. 2 *Barnes* 293., 1 *Ld. Ray.* 217., 2 *Stra.* 733., 3 *Burr.* 1353. And even as to this exception the law is doubtful, 2 *Burr.* 1010., *Buller* 148, 149. The plaintiff below was bound to prove her case as she laid it, and must show an existing cause of action when she brought her suit. A legislative exposition of the

1814.

HANTZ
v.
SEALY

1814.

HANTZ
*v.*
SEALY.

effect of an appeal from the Register's Court is given in the 18th section of the act of 13th *April* 1791, 3 *Dall. St. Laws* 98. " No appeal from the decree of the said Register's " Courts concerning the validity of a will or the right to " administer, shall stay the proceedings or prejudice the act " of any executor or administrator pending the same, pro- " vided the executor shall give sufficient security for the " faithful execution of the will and testament to the regis- " ter &c."

The case cited from *Godolphin's Orphan's Legacy* 64, *third edit.*, fully proves the proposition which I have attempted to establish. There debt was brought by an executor, and the will proved by sentence was shewn in Court. The defendant pleaded that the pretended testator died intestate, and that administration was committed to him, and shewed an appeal from the said sentence of the probate of the will. *Coke* and *Doderidge* held that the appeal suspended the probate, and so upon the matter was not any probate at all, and therefore the plaintiff could not have action.

I cannot conceive that *Hantz* is concluded by taking out letters of administration *de bonis non* with the will annexed, from insisting that legal evidence should be given of the will, or that his entry of a judgment in the Circuit Court docket on the 25th *May* 1805, and issuing an execution for costs returnable to *December* term following, could operate as the abandonment of an appeal instituted by his adversaries, without their consent. This was a palpable mistake, and was rectified at once by the counsel. The appeal to this Court remained on our records. It is admitted by the counsel of the defendant in error, that he brought forward his appeal, and argued it in *May* term 1810. Why was this done, if the appeal had been previously abandoned? Why was it thought necessary that the decision of this Court should be pronounced? If the judgment of the Circuit Court had not been affirmed here, previous to the trial of the present cause, it cannot be pretended that the probate of the will before the register could have been admitted in evidence. I can see no reason why, when it has been affirmed, our judgment in 1810 should have a retrospective effect to validate proceedings instituted to *August* term 1807.

I hasten to the other matters assigned for error, wherein I fully assent to the charge of the President to the jury.

His remarks as to marriage being a civil contract by our laws, I take to be perfectly correct. It is binding between the parties, when entered into with full consent *per verba in presenti.* The acknowledgments of the parties being man and wife, evidently refer to the illicit connection between them during the subsisting marriage between *Hantz* and his former wife, who was then living; and as to what passed in the presence of Mr. *Watts,* which has been particularly detailed by the Chief Justice, an explicit consent was not given on the part of the woman, nor did he himself consider it as a valid marriage at the time, because he recommended to them more than once to be married by a clergyman, and he thought they went out for that purpose.

There is no difficulty in saying that where it may be fairly presumed that money has been received for the use of another, there is no occasion for express proof. If the case will justify it, the jury may presume the payment of money as well as any other fact.

And as to the tender of the refunding bond to the plaintiff in error, previous to the commencment of the suit, if he meant to have made that a serious defect, he might have brought it before the Court upon an objection against the suit being sustained, or might have pleaded it in abatement, so that the fact might have been put in issue and fairly tried. When a suit for a legacy has progressed to a trial on its merits, and no complaint made of the want of a tender to the executor or administrator with the will annexed, before the action was brought, I should feel myself strongly disposed to assert, that the party had slipped his time. Here the refunding bond is actually filed in the cause; I cannot but consider the exception as a surprize on the plaintiff below on the trial. Upon the first ground alone, I am of opinion that the judgment of the Common-Pleas be reversed.

Brackenridge J. I have been unwilling to request this case to be holden under advisement, because as the judgment is to be reversed, it would be for the interest of the plaintiff that it be done immediately, that she may go on again. At the same time, I am not perfectly satisfied, that

1814.

HANTZ
*v.*
SEALY.

the judgment might not be supported. But it would require some investigation of principle before I could venture to give reasons of *dissent.* If this case should be reported with the opinions of the judges, I may give a note to be added to the report on the subject. I have been wondering only whether the defendant ought not to have pleaded at an early stage the *caveat* against the will, or the appeal *puis darrein* continuance, so as to give the plaintiff an opportunity of replying fraud and collusion, or the special matter, or perhaps negligence in the execution of the trust, that she might by *damages* compel an administration and settlement. What else could be done at common law by an action on the case or account render? But whether our system supersedes, that will be the question. I may consider it perhaps, and signify my concurrence with the majority, or my dissent, with the reasons in the case.

Judgment reversed.

*Note* which may be added by the reporter.

The facts of this case are these; the will of *Henry Sealy* proved 12th *April* 1798.

Administration, with the will annexed, committed same day to *Boreas Fahnestock.*

22d *September* 1802. Settlement of *Boreas Fahnestock's* administration account and balance, 4334*l.* 14*s.* 3*d.*  .

*September* 24th, 1802. Letters of administration *de bonis non* with the will annexed of *Henry Sealy,* granted to *Jacob Hantz.*

Release same day by *Jacob Hantz* to *B. Fahnestock,* for the balance, money bonds and notes, 4334*l.* 14*s.* 3*d.*

*August* Term 1807, the present suit brought. The defendant pleads that he did not assume or promise to pay. 2. That if he did assume, he has paid. 3. That the plaintiff is the wife of the defendant.

The Court affirm the judgment so far as respects the opinion of the Court on this matter of fact plea, as decided by the jury.

No evidence of any payment appeared or was alleged on the evidence. The whole turned on the plea of the defendant that he did not assume.

This he attempted to make out, by alleging, that he was not bound to pay until the final settlement of his accounts. The question then will be, whether a legatee must pursue the executors or administrators with the *will* annexed, through the medium of the Register's Court, and compel a settlement by citation, attachment &c. and wait until all is ended here before he can bring a suit. The result of my opinion is, that the legatee may bring a suit without waiting for this, and this as well at common law as on our act of assembly. The proving assets over and above the debts &c. will raise a promise to pay. According to a modern decision, *Cowper* 284, an action may be maintained in a court of common law, against an executor in that character, on his express promise to pay a legacy in consideration of assets. And in another case, *Cowper* 289, it was also ruled, that on the same promise grounded on the same consideration, an action will lie against an executor personally in his own right. In another case, 3 *Peere Williams* 208, some

judges have held, that policy and convenience forbade the courts of common law to entertain this species of action, since they can impose no terms on the party suing; whereas courts of equity in such suits interfere in a manner highly beneficial to private families. Having no court of chancery, our act of assembly gives the action, and our courts will exercise the chancery jurisdiction, interposing terms before they permit execution.

It is not competent to the executor or administrator to plead non-assumpsit, if he means to rely on not being executor, or no will made or proved, or the will caveated. But all this should be pleaded in the first instance, and shewn specially if he means to rely on it.

From the circumstances of this case there was reason to believe that the caveat was procured by the defendant, or at least a continuance of it procured; and there was no way of getting this put in issue before a jury; but by the defendant's pleading it, and giving the plaintiff an opportunity to reply. Although the defendant obtained letters of administration &c., with an undertaking to settle his administration account within a year, this suit is not brought till five years after, and yet the defendant alleges, that no implied promise could arise, because he had not settled.

It may be urged as having some analogy to this, that where a writ of error is brought against good faith, or where it manifestly appears either from the confession of the parties themselves, or from the admission of the attorney of the party who sues out the writ of error, or from expressions equivalent to an admission, that it is brought for the mere purpose of delay, it is holden to be no supersedeas. 6 *Vin. Sup.* 185., 4 *Vin. Sup.* 70, 71.

Action of debt lies on a judgment in a Court of Common Pleas after writ of error brought, and the record removed to the Court of King's Bench. 6 *Wils. Bacon* 420, 421.

An action of trespass for mesne profits, brought pending a writ of error. 20 *Vin.* 76.

Writ of error, only a supersedeas of execution, not of a suit on a judgment.

The power of an executor, or the right of a legatee or devisee, is derived from the will, and not from the probate.

An executor may file a bill in equity before probate, and a subsequent probate makes the bill a good one. 3 *Peere Wms.* 351.

An executor accepts the trust, or administrator, and sufficient assets come to hand, is he not bound to pay without an express promise, which he cannot be compelled to give? See *Bac. Abr. Tit. Legacy,* letter *M.*

See letter *L. Assent to a Legacy,* 4 *Massa. Rep.* 634., See 2 *Dall.* 100., 2 *Peake's Law of Evidence* 344., 1 *Comyn's Dig.* 30., *Buller's N. P.* 143., 1 *Atk.* 293., 1 *Saund. Wms. edit.* 111, 112, note 2., *Ib.* 336, note 10., 3 *Wils. Bac.* 87. letter *M., Ib.* 95., 1 *Ld. Ray.* 265., 2 *Ld. Ray.* 1510, 1511.

It would shew the necessity of pleading the caveat depending &c., and what took place on the proving the will and the appeal, with a presumption of an abandonment of the appeal, paying costs &c.

From all these it is abundantly evident to me, or at least highly suspicious, that the caveat was by collusion, and that the whole was done to baffle the legatee. I incline to affirm the judgment of the Court, that on the plea of non-assumpsit the will ought to have been admitted in evidence. In the case of letters of administration and non-assumpsit pleaded, 2 *Dall.* 100, seems in point.