## Case No. 16,869.

### VAN NESS v. VAN NESS.

[1 Hayw. & H. 251.] [1]

Circuit Court, District of Columbia.     Dec. 29, 1846.

HUSBAND AND WIFE—EVIDENCE OF MARRIAGE—DECLARATIONS AND ADMISSIONS.

1. *Held*, that the admissions and acknowledgments of the parties to a pretended marriage, alleged to have taken place in Pennsylvania, but not solemnized as required by the statutes of that state, are not sufficient, under the decisions of the courts of that state, to establish the fact of a valid marriage between the parties, when only made in the presence of each other, and not in the presence of a third party, and the court instructed the jury to bring in a verdict accordingly.

2. A verdict of eleven jurors of the panel of twelve to that effect was accepted and ordered to be recorded by the court.

Robert J. Brent and Henry May, for plaintiff.

James M. Carlisle, Joseph H. Bradley, R. S. Coxe, and Henry D. Gilpin, for defendant.

The plaintiff [Mary Ann Van Ness] claimed that she was the widow of the late John P. Van Ness and entitled to preference in the administration of his estate, and that the letters of administration granted to Cornelius P. Van Ness, the brother of the deceased, be revoked, and the administration of the estate be granted to her. That she was married to the said John P. Van Ness August 6th, 1845, by an alderman in Philadelphia, Penn. The administrator, Cornelius P. Van Ness, in his answer says that the true name of the plaintiff is Mary Ann Connor, and that she is not the widow of said John P. Van Ness. It was adduced in evidence on the trial that Connor, the husband of the plaintiff, left Washington about seventeen years ago, since which time he has not been heard from, and that the plaintiff had heard many years ago that he was dead.

The following issue was brought up from the orphans' court. Causin, Judge.

August 20, 1846.

"Whether Mary A. Van Ness be the widow of John P. Van Ness or not."

November 1, 1846.

A motion was made by Mr. Brent that Nov. 9th be set for trial of this case.

Mr. Carlisle objected, because the petitioner had given notice that she intended to take

<hr>

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

evidence in Philadelphia, the purport of which they were ignorant of, and consequently must object to the fixing of any day till this evidence was taken.

THE COURT refused to grant the motion.

November 18, 1846.

Mr. Brent opened the case in behalf of the plaintiff.

After alluding to several disadvantages under which his client labored, he gave a sketch of how General Van Ness became possessed of his property, and alluded to the fact that he had left no will. The real issue was who should be the administrator. He gave a sketch of Mrs. Van Ness' life. While she kept a boarding house in this city she became known to General Van Ness, and that he was infatuated with her, and that she erred, and that an offspring was born of these parties; yet she had importuned him for the reparation due her. That he would prove that he had recognized her as his wife. He then alluded to the marriage having taken place in Philadelphia on the 6th of August, 1845.

Mr. Carlisle opened for the defence. He pronounced the case a most extraordinary one. He charged perjury, not only to the party claiming, but as also calculated to bring perjury upon the soul of another. On the 7th of March last General Van Ness died.

December 12, 1846.

The case was closed on the part of the defence.

Mr. Brent, on the part of the plaintiff, called Samuel Stettinius, when, after his being sworn, his testimony was objected to on the part of the defence as not being in rebuttal.

In the argument Messrs. May and Brent both declared that. by the evidence of this witness, they could prove certain circumstances which would establish the genuineness of one of the letters whose genuineness was disputed by the defence:

THE COURT sustained the objection of the defence.

December 16, 1846.

The following question was put to a witness:

Do you know General Van Ness' reputation for chastity?

Mr. Carlisle remonstrated against opening the tomb and bringing forth for the amusement of the public the foibles and failings of the dead.

Mr. Brent replied, and argued that this uttering of eulogies upon the dead and dealing out damnation to the living, was more unjust.

THE COURT, after consultation, ruled the evidence to be inadmissible.

December 21, 1846.

On the closing of the testimony, Mr. Bradley asked for the following instructions: "That even if the jury shall believe the whole evidence given on the part of the petitioner to be true, still there is no evidence from which the jury can lawfully infer that a marriage did ever in fact take place between her, the said petitioner, and John P. Van Ness."

He first contended that they were not married by the law of Pennsylvania (Hantz v. Sealy, 6 Bin. 405), and that cohabitation and repute are necessary. That the opinions of the aldermen that the statute was obsolete, and was not to be set up against the decision of the supreme court of that state, yet that they fully sustained the case in 6 Bin. That a man and woman riding out in a hack, and return and say they have been married, is not evidence of a marriage; that acknowledgments of the parties made out of the presence and hearing of others was not evidence of a marriage which affects third parties. He cited Church v. Hubbart. 2 Cranch [6 U. S.] 237; Dalrymple v. Dalrymple, 2 Hagg. Consist. 54; Brush v. Wilkins, 4 Johns. Ch. 520; Mostyn v. Fabrigas, Cowp. 161; 1 Greenl. Ev. § 107, as to who should determine what was the law in relation to marriage in Pennsylvania, and that the aldermen were not instructed in the law as required in those cases, and therefore their evidence of what established a marriage was not sufficient. That the evidence of Mr. Gilpin, who said he knew of no other law than the statute, and the decisions of the supreme court of the state contradicted the aldermen, and was entitled to a preference. He, therefore, said the only evidence of the law of Pennsylvania before the court was the statutes and the decisions of the supreme court of that state. The statutes, it was not pretended, had been complied with; and the decisions of the court required an acknowledgment by both parties in the presence of another party.

Mr. Brent followed in opposition to the prayer, and reviewed the whole law relative to the matter, adducing many new authorities for the purpose of showing that there had been sufficient evidence for a jury to pass upon, and for them to say whether a marriage had taken place or not.

December 29, 1846.

THE COURT decided to give the instructions in the following words: "Upon the whole evidence aforesaid, if the same shall be believed by the jury to be true, there is no evidence from which the jury can find that the said petitioner was lawfully married to the said John P. Van Ness."

Judge MORSELL delivered his opinion upon the case, and announced the decision of the court. Judge DUNLOP also gave his opinion at length, setting forth the reasons from which he concurred in the opinion delivered by Judge MORSELL. Chief Judge CRANCH did not sit, as he was unwell.

Mr. Brent filed twelve bills of exceptions to the instructions, and asked the privilege of addressing the jury upon the evidence of the case.

THE COURT denied there was any evidence before the jury, and refused to hear further argument upon the testimony.

One of the jurors asked leave to be absolved from rendering a verdict agreeable to the instructions of the court, as he stated that he could not conscientiously do so.

THE COURT said there was no evidence before the jury, and the responsibility rested with the court.

After some consultation, the foreman of the jury asked if eleven jurors could give a verdict.

THE COURT said they could not.

The juror was allowed to retire from the jury-box, and the remaining eleven jurors returned to the court a paper in the form of a verdict that, under the instructions, they find "that Mrs. Mary Ann Van Ness is not the widow of John P. Van Ness."

The verdict was recorded and the jury discharged.

The certificate of the finding of the jury was sent down to the orphans' court. The exceptions to the rulings of the circuit court did not accompany the certificate.

NOTE. This case was brought up by writ of error from the circuit court to the supreme court of the United States, and on motion to dismiss the case by the attorney for Cornelius P. Van Ness, administrator of John P. Van Ness. it was so ordered, Chief Justice Taney deciding that there was no final judgment, order or decree in the circuit court; that the certificate of the finding of the jury transmitted by the circuit court to the orphans' court was not such a final judgment, &c., as is included within the statute of February 27, 1801 [2 Stat. 103]. See 6 How. [47 U. S.] 62.