*McAlarney, for plaintiff.*

*Kunkel and Simonton, for defendant.*

---

*Court of Common Pleas, Dauphin County, July 1st, 1867.*

. ADOSE ET UX. *v.* FOSSIT.

The fact that a woman cohabited with and spoke of a man as her husband, is sufficient to bar her claim to the estate of another man, whom she claimed to have married during the lifetime of the former; proof of an actual marriage is only necessary in indictments for adultery or actions for criminal conversation. A woman is not debarred from claiming her husband's estate under the laws relating to escheat by the fact that she had eloped from him, and was living with an adulterer.

A woman having deserted her husband without sufficient cause, and not living with him at the time of his death, cannot claim three hundred dollars out of his estate. The fact that a man called another his son, and the latter bore the former's name, is sufficient to prove that the son was legitimate. A marriage cannot be inferred because a man and woman continue to cohabit as husband and wife after the death of another husband of the wife.

BY THE COURT.—Several reasons have been assigned for a new trial in this case, some of which are not, in our opinion, precisely in accordance with what transpired on the trial, as the facts on the several issues were mainly left to the jury. We will pro-

[Adose et ux. *v.* Fossit.]

ceed to consider the issues decided in their order. 1. The jury found that the petitioner was not the lawful wife of Daniel Fossit at the time of his death. The finding was predicated on the fact that Susan Adose had a husband in full life at the time she married Fossit. There was much evidence submitted to the jury on that subject, and it was left as a question to be determined by them. Their finding is in our opinion in accordance with the weight of the evidence. Long before this woman's marriage with Fossit, she lived and cohabited with a man named John Ray as her husband, always spoke of him as such, and after his death claimed a portion of his estate as his widow, although she was then the wife of Fossit. This claim is not very clearly and regularly established; but the long cohabitation and reputation, together with her assertions, are fully proved. This is, in our opinion, such evidence as must be submitted to a jury to show a marriage in fact. Direct proof is only required in prosecutions for adultery or bigamy, or civil suits for criminal conversation. This proceeding is neither; and it can scarcely be pretended that the proof is insufficient to establish a marriage between her and John Ray, had the question arisen before her intermarriage with Fossit; and we are at a loss to see how she can get clear of the effect of the cohabitation and acknowledgments by subsequently contracting marriage with another person, when the question arises on a mere claim of property, part of the estate of her second husband. 2. It was clearly proved that Susan eloped from Daniel in an adulterous manner, and lived with her adulterer in another county at the time of Daniel's death. By this she forfeited all claim of dower in his estate under the statute of 13 Edward I. The present is not, however, a claim of dower, but of the whole estate under the act of 21st January, 1819, relative to escheat (7 Smith's Laws, 114). To recover this, she presented her petition as provided by the act of 6th April, 1833 (Dunlop, 569); and hence this issue was directed. It is clearly settled that such elopement was no cause of forfeiture by the common law, and the cause must come strictly within the words of the statute. It would not debar a widow from recovering her distributive share out of the deceased husband's personal estate, as given by our acts of Assembly, although in many respects placed on the same footing as dower; nor would it prevent her successfully claiming his whole estate under the acts referred to, relating to escheat. We are of the opinion that this finding would not preclude her recovery, were there nothing else in the way; and the issue on that point was unimportant, except so far as it bears on the claim for three hundred dollars under the act of Assembly, as set forth in the third question to which the attention of the jury was directed. 3. The jury find that Susan did not form any part of Daniel's family at the time of his death. She had previously eloped, and was living

[Adose et ux. v. Fossit.]

absent from him in a state of adultery; at that time she formed no part of his family. Section 5 of the act of 14th April, 1851, authorizes the widow to *retain* either real or personal property belonging to the estate of her deceased husband to the value of three hundred dollars; and the same shall not be sold, but suffered to *remain* for the use of the widow and family. The widow is suffered to *retain* the goods, not to *obtain* them from others. They are to remain with herself and the family of the deceased for their use. The whole tenor of the statute contemplates that the goods or money shall be held by those constituting the family of the deceased at the time of his death. It never was intended that the three hundred dollars' worth of property should be distributed among children, who were of full age, living separate from their parents, and constituting no part of the family of the deceased at the time of his death. Nor does it intend that a widow, who had long since deserted her husband by her own act, and without impropriety on his part, and was living separate from him, should obtain that sum from his estate to the exclusion of creditors and heirs. The act has in view a provision for the family of a decedent, who were about him at the time of his death, and is designed to prevent them from being stripped of the last remnant of his property, and left in destitution. The whole wording shows that the goods were to be *retained* by those then in possession, and left unsold for their use. There might possibly be excepted cases, as where the husband by his own improper act had driven his wife from her home, or the father had turned his children out of doors; in each case his house for such purposes might be considered their domicil, and they be permitted to retain. But when the wife had eloped, and lived in a state of adultery at the time of her husband's decease, it never could have been intended that after his death she should return to claim three hundred dollars' worth of his property as part of his family. At the time of his demise she constituted no portion of it, could not *retain* the goods, nor could they *remain* for her use. Susan Adose is not entitled to any portion of the three hundred dollars allowed by law as the widow of Daniel Fossit, deceased, under the circumstances proved.

4. The jury found that Daniel Fossit, Jr., is the lawful son of Daniel Fossit, deceased. Was this finding on sufficient evidence? The witnesses testified that Daniel, senior, always called Daniel, junior, his son; frequently spoke of him as such; never qualified it by saying that he was illegitimate. He assumed, and always bore his father's name. One witness stated that before and at the time of Daniel's birth, his father and mother cohabited together as husband and wife; whether they were married or not the witness did not know. Other witnesses proved that they separated over forty years ago, the woman always going

[Adose et ux. *v.* Fossit.]

by her maiden name; that she lived and died in the vicinity some years prior to the death of Daniel, senior. Suppose the facts as stated by the one and the other sets of witnesses to be of equal weight so far as regards the marriage of these parties from cohabitation, yet where a person always spoke of another as his son without more, introduces him to the world as such; he bears the father's name, shall we not rather presume that he was legitimate than illegitimate? It is presuming in favor of innocence rather than of guilt; that the conduct of the parents was lawful rather than unlawful. If a person says to the world, "This is my son," speaking of one who bears his name, is it not to be presumed that he meant his legitimate, lawful son? It is very true that our lawbooks state many other acts, such as superintending his education, providing for his wants, the family traditions, etc., which may be proved by way of corroboration; yet it is not said that these are requisite. Besides, as to providing for and educating children among the poorer colored classes of society, little could in general be proved, for little is done; scarcely any education given, and few wants provided for. It is not considered proper in law to bastardize by mere reputation after the death of the parents, especially where the father has always recognized the son as his offspring during the lifetime of the former. This question was fairly submitted to the jury on what we consider sufficient evidence; nor are we dissatisfied with their finding.

There is one other important question raised in this case by Adose and wife, predicated on the fact that Susan continued to reside with Daniel for some time, perhaps over a year, after the death of her former husband, John Ray; from which it is contended that the jury should have inferred a subsequent marriage between the parties, after the legal disability was removed; although we do not believe that in reality there is the slightest ground to suppose that an after marriage took place in point of fact, as Susan throughout the trial contended she had never been lawfully married before, and therefore, there could be no inducement for a repetition of the ceremony. Yet if it was a *legal presumption* from the continued cohabitation, the jury should have been instructed to infer it, and no such instruction was given; therefore, an error was committed. In some of the States the second marriage has been strongly presumed on very slight or no grounds. Such is the case in Kentucky and New York (8 B. Monroe, 117; 4 John. R. 52). Yet in others and our own no such inference is drawn. The true question is, was there *sufficient evidence from which to infer an after marriage?* Where the wife claims dower or other interest in the estate of her alleged husband after his death, an *actual marriage* must be proved (Cord on the Rights of Married Women, s. 551). True, marriage with Fossit was proved here, but that was destroyed by showing that the woman had another husband

[*Adose et ux. v. Fossit.*]

in full life at the time it was consummated, and no after marriage was shown. The bare fact that they lived together after the termination of what was established as an illicit intercourse will not, *per se*, be sufficient to raise an inference of marriage (Cord, s. 552). If sufficient of itself, why decide, as was done in Hantz *v.* Sealy (6 Binn. 405), a leading and well-accredited case in this State? Why not presume an after marriage? Where a couple went together to live in illicit intercourse, the one being a married woman, afterwards her husband died, and she continued living as before; held, that it was not to be presumed that the parties were afterwards married; but the children born after the husband's death, as well as those before, were held to be illegitimate (1 Bishop on Marriage and Divorce, s. 507, and the case there cited). The *law* does not presume an after marriage, but the fact may be inferred by a jury (Bishop, s. 508). It is not an inference of law, but may be inferred by a jury, which may and must consider all the circumstances of the case; and to decide in favor of an after marriage would in most cases be to determine against the probabilities of the case (Bishop, 509, 510; 3 Bradford, 369; 2 Vermont, 582, 591; 1 House of Lords Cases, 498). In the case under consideration there was not the least ground to infer that the parties were ever married. Had it been so this woman, who is in full life and was present at the trial, could have readily pointed out the person who performed the ceremony, as she and her alleged husband, Fossit, continued to reside in this place until the time of her elopement. We consider that the jury decided correctly on all of the questions submitted, although the second was unimportant and immaterial, except so far as it has a bearing on the third proposition. The motion for a new trial is out of time; but that might not debar our action, if satisfied that we had committed an error material to the merits. We regret that the plaintiff in the issue did not except to our charge so as to give the chance for a review; but that not having been done in time precludes our sealing a bill of exceptions, as the defendant can insist on his rights. The motion for a new trial must be overruled.

*Graydon and McKinney, for plaintiff.*

*L. B. Alricks, for defendant.*