Paolo Ibello
vs.                     } P. A. No. 892
Louis A. Sweet, Adm'r.
et al.

November 27, 1925

BAKER, J. Heard, jury trial waived.

This is a probate appeal from a decree of the Probate Court of the Town of North Providence awarding to the appellee the sum of $450 as a six months' allowance for the support of herself as the widow of one Raffaele Ibello.

The only question raised for determination on this appeal is whether or not the appellee was the wife of the said Raffaele Ibello during his lifetime. It appears without dispute that no ceremonial marriage ever took place between them and the appellee claims to be the widow of said Raffaele by reason of what is commonly known as a common law marriage.

In the judgment of the Court, an examination of the testimony shows clearly that the relationship, as entered into by the appellee and Raffaele Ibello was clearly meretricious. At that time the said Raffaele had a wife living, who was then in Italy. The evidence shows that the appellee knew that the said Raffaele had a wife, the only claim made being that she did not know the whereabouts of said wife. It further appeared that some years before the appellee went to live with Mr. Ibello, both the appellee and Mr. Ibello's wife worked in the same mill and were acquainted with each other.

The evidence shows that Mr. Ibello never attempted to obtain any divorce from his wife during the time he was living with the appellee, and, in fact, they never discussed this matter.

The appellee attempted in a general way to prove that by general reputation she and Mr. Ibello were considered as man and wife, but in the opinion of the Court she completely

failed in this endeavor. In fact, a consideration of the testimony shows pretty clearly that the friends and neighbors of the parties knew that Mr. Ibello had a wife living in Italy and that the relation between the appellee and Mr. Ibello was illicit. The fact, as appeared from the evidence, that the appellee was introduced as, and at times was known as Mr. Ibello's wife, proves little. Such a holding out is frequently made from a desire to conceal an illicit relation and not necessarily as an acknowledgment of the marital state.

In the judgment of the Court, the appellee's brother gave a true picture of the situation when he testified that her family was glad that someone took her and supported her, because she had several children by prior marriages, and because her father was not able to care for her. There would, therefore, seem no question but what the original relationship of these parties was meretricious.

The law regarding so called common law marriage · is rather conflicting. Some jurisdictions recognize such a marriage, others do not. In some, statutes have been passed regulating the matter.

See Koegel, Common Law Marriage, page 164.

Apparently the weight of authority is that where the relationship between a man and a woman was originally illicit, that, after the impediment is removed, then there should be some outstanding circumstances or some new intent by the parties to show that the marriage status was then and there created between them. The burden of showing this and of proving the marriage is on the party claiming it. Evidently, the fact that the parties continued to live and cohabit after the removal of the impediment to their marriage in the same manner they had before that time is not in itself enough to create a so called common law marriage.

Sebree vs. Sebree, 293 Ill. 228.

Hant vs. Sealy, 6 Bin. 405; Corpus Juris, Vol. 38, pages 1320, 1339 and 1341.

The evidence in this case shows that about the middle of January, 1923, Paffaele Ibello obtained information from Italy that his wife had died in the latter part of December, 1922. It also further appears that Mr. Ibello himself died March 12, 1923, or about two months after receiving this information During this period he made no attempt to have a ceremonial marriage with the appellee.

The outstanding fact which the appellee urges as showing that the intent was that the relationship should become that of husband and wife after the impediment was removed is a gathering held soon after word was received from Italy that Mr. Ibello's wife had died. The appellee contends that this gathering, which was more or less in the nature of a family dinner, shows clearly that the parties then intended she should become Mr. Ibello's wife. Certain testimony produced on her behalf tends to show that at that time Mr. Ibello stated that she was his wife; that she was wished good luck; that her mother's hand was kissed, and that her health was drunk. There is no question in the Court's mind, from the evidence presented, but what some such celebration or gathering was held. The difficulty comes in determining from the testimony the reason and the purpose therefor. The appellant urges that possibly this gathering might be to celebrate Mr. Ibello's wife decease. The Court rather doubts this, but does believe that it can be very plausibly argued that all the parties involved felt a certain amount of relief by reason of the fact that any danger of civil or criminal proceedings, in case Mr. Ibello's wife should return to this country, had been removed by

reason of the death of the wife. There is testimony in the case tending to show that the appellee had made statements about shooting certain people in case the wife did return to this country.

The evidence introduced on behalf of the appellant would tend to show that Mr. Ibello made certain statements regarding the appellee after his wife had died, in which he said that she was not the woman for him and that he did not care to marry her, and would not marry her. Some witnesses stated that Mr. Ibello said he was going to marry Jennie. This statement, evidently looking towards the future, would not of course, particularly help the appellee in establishing the marriage status. Appellee's witness Cusano testified that at the time he was married in February, 1923, he suggested to Mr. Ibello that they have a double wedding and that he at that time marry the appellee. The witness says, however, that Mr. Ibello declined and stated that he was going to have a bigger wedding and surprise everybody some time in the future. This would tend to a certain degree, if true, to show that Mr. Ibello did not consider the gathering, held after the news of his wife's death reached this country, to be in effect a wedding or enough to bring about the relationship of husband and wife between himself and the appellee.

After considering all the evidence carefully, the Court is of the opinion that the testimony does not present sufficiently clearly any such change in circumstances or any outstanding event or circumstances to show that both parties intended that a new relationship of husband and wife had come into existence following the death of Mr. Ibello's wife. The burden of proof is on the appellee to establish this and in the judgment of the Court she has not done so.

The exact point in issue in this case has not been before the court in this state. Several decisions, however, are somewhat helpful. See

Peck vs. Peck, 12 R. I. 485;

Odd Fellows Beneficial Association of R. I. vs. Carpenter et al, 17 R. I. 720;

Williams vs. Herrick, 21 R. I. 401.

In the case of Odd Fellows Beneficial Association etc, vs Carpenter, supra, the Court held that the fact that the man in his last will spoke of the woman as his wife, taking into consideration the circumstances of the case, was not enough, together with other facts, to show a common law marriage.

On the law and the evidence, the Court finds that the appellee was never the wife of Raffaele Ibello and that she was not entitled to have a six months' allowance for support made to her by the Probate Court.

The appeal is sustained.

Louis V. Jackovony for Appellant.
John L. Curran for Appellee.