## Commonwealth *versus* Stump.

1. Where there is no proof of actual marriage,—cohabitation and reputation are necessary to ground a presumption of marriage; proof of cohabitation alone is insufficient.

2. Reputation consists of the speech of the people who have an opportunity to know the parties; to be proved by them and not by the wife.

3. Marriage is in law a civil contract, not requiring any particular form of solemnization before officers of church or state, but must be evidenced by words in the present tense, uttered for the purpose of establishing the relation of husband and wife, and should be proved by the signature of the parties or by witnesses present when it was made.

4. Therefore, where the evidence of the contract was the declaration of the wife that, "about 31 years since she went to the house of A. S. to live with and keep house for him, under a mutual promise and agreement that they would sustain towards each other the relation of husband and wife, and that they did thus live and cohabit together," *it was held* that there was not proof of marriage in fact.

5. An Act of Assembly legitimating children of a testator after·a devise to them had vested, did not relieve the devise from collateral inheritance tax.

6. The court below rejected evidence of declarations of the father, made out of the presence of his wife, that they were not married till after the children were born. *Held*, not to be error.

APPEAL from the decree of the Register's Court of *Allegheny county*, in the matter of the assessment of collateral inheritance tax on the estate of Abraham Stump, deceased. Stump, the deceased, then an unmarried man, about the year 1833, employed Jane Pearson as his housekeeper. About a year afterwards she had a child of whom Stump was the acknowledged father, and who lived but about a year. Stump and his housekeeper occupied separate chambers from the time she came to live with him until about a year after the death of the child, when they commenced occupying the same chamber, and shortly afterwards a son, George H. Stump, was born ; about fourteen months after, another son, Abraham H. Stump, was born. Some time after the birth of these children Abraham Stump and Jane Pearson were married, they having continued to occupy the same chamber in the same manner as had been done. He died in May 1853. There was evidence that they cohabited together as man and wife; that they rode together to the funeral of their first child; that he frequently referred persons who came to buy articles of provisions, to her ; that she sold such articles at home and at the store ; that he sometimes called her the " old woman ;" that they roomed together when away from home, and that he recognised the two sons as his. There was no evidence that they were reputed man and wife, except her statement in an ex parte affidavit, which was read on the trial by agreement. All other witnesses on this point testified that the reputation was that they were not married.

In her affidavit, made March 3d 1865, she stated " that about thirty-one years since the said deponent went to the house of said

[Commonwealth v. Stump.]

Abraham Stump, to live with and keep house for him, under a mutual promise and agreement that they would sustain towards each other the relation of husband and wife; that deponent and said Abraham thus lived and cohabited together as husband and wife, and were known and reputed to be such in the community in which they resided; that during the first five years that deponent and said Abraham Stump thus lived and cohabited together as man and wife, they had two sons, to wit: George H. and Abraham H., now living; that after the birth of the said two sons the said deponent and said Abraham considered that it would be better, for the sake of their children, to have the marriage ceremony performed, which was accordingly done; but that in the mind of this deponent and said Abraham they were as much husband and wife when they first contracted to live together as husband and wife as they were after the ceremony was performed; that afterwards, about the year 1848, by advice of counsel, they had an Act of Assembly passed, legitimating said children; the said Abraham Stump died about twelve years ago, leaving a widow the said deponent, and said named two children."

The act legitimating the children was passed April 28th 1854, after Stump's death; it is as follows:—

" That George Humphrey Stump and Abraham Harrison Stump, illegitimate sons and only children of Abraham Stump, and Jane his wife, of the township of St. Thomas, in the county of Franklin, who were born before the marriage of their said named parents, shall have and enjoy all the rights, privileges, benefits and advantages of legitimate children; and they shall be capable in law to inherit and transmit any estate whatever as fully and completely, to all intents and purposes, as if they had been born in lawful wedlock."

Stump, by his will dated April 6th 1853, devised and bequeathed all his estate, except two small legacies, to his wife and his above-named two sons. On the 4th of March 1865 the register of Franklin county assessed a collateral inheritance tax of $1262.50 on the estate of Abraham Stump, on the ground that the sons were illegitimate.

From this assessment the sons appealed to the Register's Court, which, on their application, directed an issue in the Court of Common Pleas to try the fact of marriage.

On the trial of the issue, before King, P. J., evidence was offered, on behalf of the Commonwealth, that Stump had declared, out of the presence of his wife, that he had not been married until after the birth of the children. The evidence was rejected and an exception taken.

The plaintiff submitted the following point:—

" That proof of cohabitation alone is not sufficient to establish the fact of the marriage, but that there must be proof of cohabita-

[Commonwealth *v.* Stump.]

tion and reputation, and defendants having failed to prove reputation of the marriage, the Commonwealth must recover."

To which the court answered:—

"It is usual when this subject is referred to in the books to find the circumstances of cohabitation and reputation united, as means of proof to establish a marriage. But we say to you, upon the authority of Thorndell *v.* Morrison, 1 Casey 327, that such evidence of cohabitation, as man and wife, for a long period of time, as has been adduced in this case, is sufficient evidence of marriage for all civil purposes; and that, if you believe this evidence, your verdict must be for the defendants. We therefore answer the plaintiff's point in the negative."

The jury found for the defendant, and the verdict being certified to the Register's Court, the decree of the register assessing the tax was reversed, and the Commonwealth ordered to pay the costs.

The Commonwealth removed the case into the Supreme Court, and assigned for error the rejection of the evidence as above stated, and the answer to the plaintiff's point.

*L. S. Clark*, for Commonwealth, plaintiff in error.—Reputation *and* cohabitation are sufficient evidence of marriage in Pennsylvania: Senser *v.* Bower, 1 Penna. R. 452; Covert *v.* Hertzog, 4 Barr 145; Thorndell *v.* Morrison, 1 Casey 326. Cohabitation alone is not sufficient. Proof of circumstances is presumptive, but may be rebutted: Physick's Estate, 4 Am. Law Reg. 423; 2 Greenl. on Ev. §§ 462, 464. The reputation must be general: Cunningham *v.* Cunningham, 2 Dow's P. C. 514.

The evidence rejected was offered to prove the marriage, which was direct proof: Hill *v.* Hill, 8 Casey 511; Kenyon *v.* Ashbridge, 11 Id. 157; Physick's Estate, supra.

*T. B. Kennedy* and *J. McD. Sharpe*, for defendants in error. —Marriage is a civil contract, which may be completed by any words in the present tense, without regard to form: 2 Kent's Com. 86; Hantz *v.* Sealy, 6 Binn. 405; and may be proved like other contracts: Senser *v.* Bower, 1 Penna. R. 452; Thorndell *v.* Morrison, 1 Casey 326; Covert *v.* Hertzog, 4 Barr 145; Physick's Estate, supra. Declarations of the parties are of equal force with reputation: Hill *v.* Hill's Administrator, 8 Casey 511; Kenyon *v.* Ashbridge, 11 Id. 157; Guardians of the Poor *v.* Nathans, 5 Penna. Law Journ. 1; Hanna *v.* Phillips, 1 Grant 253; Physick's Estate, 4 Am. Law Reg. 423; Wilkinson *v.* Payne, 4 Term R. 468; In re Taylor, 9 Paige 611.

The opinion of the court was delivered, October 17th 1866, by WOODWARD, C. J.—In 1865 the register of Franklin county

[Commonwealth *v.* Stump.]

caused an appraisement to be made of the real and personal estate which the above defendants held under a devise from their father, and assessed it with a tax of $1262.50 under the Collateral Inheritance Tax Law, on the ground that the devisees were illegitimate sons of their father when the devise took effect. On appeal to the Register's Court an issue was framed to try the legitimacy of the devisees, or, in other words, to try the question of fact, whether the parents were married before the boys were born. This was a question for the jury, but it is complained of that the court instructed the jury, on the authority of Thorndell *v.* Morrison, 1 Casey 326, that cohabitation of the parents was, alone, sufficient to establish their marriage. It appears from the charge that the learned judge did very distinctly negative the plaintiff's point, that proof of cohabitation and reputation was necessary to ground a presumption of marriage, and did lay down the law, on the authority of the above case, that continued cohabitation for twenty years, without proof of reputation, was sufficient evidence of the marriage.

Herein we think there was manifest error. The doctrine of Thorndell *v.* Morrison, interpreted, as all reported judgments ought to be, by the facts of the case, is that reputation *and* cohabitation are sufficient evidence of marriage for civil purposes, and this doctrine is consistent with our antecedent cases. This was the proposition which the *court* decided in that case, and if incautious language fell from the judge appointed to express the opinion of the court, it should be received with the limitation imposed by the facts. Unless this rule be observed in interpreting and applying our decisions, injustice will be done to us, and the law will rapidly fall into confusion. Reading that decision in the light of this rule, it does not sustain the instructions given to the jury in this case, but it should have led the learned judge to an affirmance of the plaintiff's points. Nor was the error harmless. Had there been evidence of reputation as well as of cohabitation, it might have been presumed that the jury based their verdict upon it notwithstanding the mistake of the judge, but there was no such evidence except by the mother, and she was successfully contradicted on this point. Whether there was a marriage or not would be a fact peculiarly within her knowledge, but whether there was a *reputation* of marriage was a fact to be proved by neighbors and acquaintances rather than by her. A reputation that was known only to her would be no reputation at all. Reputation consists of the speech of the people who have an opportunity to know the parties, and when the people all deny knowledge of such reputation, and allege, as several witnesses did, that the reputation was that the parties were not married, it signifies nothing that the woman permitted herself to swear that she and Stump were " known and reputed to be husband and wife in the

[Commonwealth *v.* Stump.]

community in which they resided." Reputation and cohabitation at best are only presumptive proofs, and where either of these grounds fails, the court should not allow the presumption of marriage to be built upon the other.

But the court put the case to the jury, not only on the presumptive evidence of cohabitation, but on the direct proof by the mother, Jane Stump, herself.

If she and Abraham Stump were ever married, I do not mean in form by a minister or magistrate, but in fact, by a mutual contract which the law would account sufficient for civil purposes, she could have told the jury when, in what place, and in what words the contract was made, for her deposition was taken, and all objections to her competency were waived. Yet all she swore on this head was that " about thirty-one years since she went to the house of said Abraham Stump, to live with and keep house for him, under a mutual promise and agreement that they would sustain towards each other the relation of husband and wife, and that they did thus live and cohabit together."

In our opinion, this was not proof of a marriage in fact. Marriage is in law a civil contract, and does not require any particular form of solemnization before officers of church or state, but it must be evidenced by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife, and, like all other civil contracts, should be proved either by the signature of the parties or by witnesses who were present when it was made.

For the sake of public manners and morals and to avoid scandal, it is better that such contracts should be attested by some officers of religion or by a civil magistrate, but if parties will not respect the wholesome usages of society in this regard, they should at least save their issue from the reproach of bastardy by making a contract of marriage that shall be susceptible of proof.

If the contract proved be a mere hiring of a housekeeper, the adding of concubinage does not make it a marriage. And what more is the proof in this case ? The woman says she went to Stump's house to live with and keep house for him. That was a contract for housekeeping such as women often make with widowers. But she adds that it was under a mutual promise and agreement that they would sustain towards each the relation of husband and wife. When was this promise and agreement made ? Not when she went there, for the witnesses say she did not sleep in the same room with Stump until after the birth of her first child. If they were to sustain the relation of husband and wife from the first they should have slept together—if that relation were subsequently established, in what words was the contract formed— when was it made, and who witnessed it ? On these points there was an utter failure of proof. The evidence in Hantz *v.* Sealy,

[Commonwealth v. Stump.]

6 Binn. 405, went much further than in this case, and yet it was adjudged insufficient.

Not only did the direct proof fail to establish a marriage, but it tended strongly to disprove it. After the death of Abraham Stump, his reputed wife, by the advice of counsel, obtained an Act of Assembly, dated 28th April 1854, for legitimating these two defendants, who are described therein as " illegitimate sons and only children of Abraham Stump and Jane, his wife, who were born before the marriage of their said named parents."

Now this declaration of the illegitimacy of the defendants would not conclude them unless it could be shown, which was not shown, that the legislature made it at their instance ; but it tends strongly to contradict the testimony of Mrs. Jane Stump. She says that after the birth of the sons the marriage ceremony between her and their father was performed, and that afterward, by advice of counsel, they had the Act of Assembly passed, legitimating the children.

" They," that is, she and Abraham Stump, had the act passed. Then it was an admission by each of them that they were not married when the boys were born. And the marriage ceremony, openly performed after the birth of the sons, was a further admission to the same effect. And both facts were direct and conclusive contradictions of her pretence that the marriage relation had been established when she went to keep house for Stump or at any time prior to the birth of the sons. Though she was mistaken in attributing the act to her husband, as it did not pass till near a year after his death, yet that it was passed at *her* instance is no doubt true, which makes the admission more personal.

Thus the direct, no less than the presumptive evidence, failed to establish the marriage of the parents before the birth of the sons, and if not born in lawful wedlock they were illegitimate.

The Act of Assembly removed the taint from their blood for all ordinary purposes, but not so as to exempt their estate from the Collateral Inheritance Law, which in terms includes lineal descendants not born in lawful wedlock, as well as collateral heirs or devisees. Had the legitimating act been passed *before* the devise took effect, the devisees would, I take it, have held the estate exempt from the Collateral Inheritance Law, for they would have been as capable in law of taking as if they had been born in lawful wedlock, but their estate vested at the death of the testator, which was in May 1853, and if illegitimate then, the Commonwealth's right to the tax vested then also. The legitimating act passed the next year contains no word to release the Commonwealth's vested right, and that it can have no such retroactive effect, *proprio vigore,* is shown by the case of Galbraith v. The Commonwealth, 2 Harris 258, where a similar act, passed the next day

[Commonwealth *v.* Stump.]

after the death of the decedent, was held insufficient to take the estate out of the Collateral Inheritance Law.

The other assignments of error have not been sustained.

I have discussed the case more fully than the precise questions upon the record would have required, but not more fully than was necessary to present it in all its aspects.

The judgment is reversed, and a *venire facias de novo* is awarded.