## Morris, Appellant v. McKeesport Coal & Coke Company.

Argued April 28, 1930.

113

Before TREXLER,
P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and
BALDRIGE, JJ.

G. M. McDonald, for appellant.—Where words *"in futuro"* in a contract to marry are followed by co-habitation, the contract is executed and the marriage is valid: Comley Estate, 185 Pa. 208; Hines Estate, 10 Pa. Superior Ct. 124.

Ralph H. Behney, Counsel, State Workmen's Insurance Fund, and with him Roscoe R. Koch, Deputy Attorney General, and Cyrus E. Woods, Attorney General, for appellee.—To constitute a valid marriage there must be a contract per verba de praesenti, uttered with a view to establish the relation of husband and wife: Edwards v. Enterprise Manufacturing Co., 283 Pa. 420; Murdock Estate, 92 Pa. Superior Ct. 275.

OPINION BY TREXLER, P. J., July 10, 1930:
This matter came before the lower court on appeal from the decision and order of the Workmen's Compensation Board before whom the claimant asked for compensation as the common law wife of the deceased employee. The Compensation Board found that the claimant had not been the lawful widow of the de-

114

ceased employee. After a review of the evidence, we are all of the opinion that the finding of the Compensation Board was properly approved by the lower court.

The substance of claimant's testimony, changed into narrative form, is as follows: "About the year 1924 or 25, Thomas Morris came to live with me. I was then the wife of Clarence E. Gerlach. Morris occupied his own room. On September 21, 1926, I secured a divorce from my husband. About November, 1926, the deceased, Thomas Morris, and I made an arrangement in which we agreed to share the same home. I was supposed to do the duties of a wife and he of a husband. We had not decided the question of marriage because he had always acknowledged me as his wife. When I started to live with him in 1926, we had decided at some time—just as soon as we had enough money, that we would be legally married. In the meantime we would live as man and wife. He wasn't employed then. If we went out, I was introduced as his wife to his friends and I did likewise. I bought things for the house which he paid for. He would give me his pay envelope. The children of a former marriage continued to live with us and were supported by him. From November, 1926, until the time of his death, there was some discussion between me and him about having a legal marriage ceremony performed, but we had always passed as man and wife and we thought when I had finished paying for the divorce papers, we would go to another county and be married, then everyone else wouldn't know it. The understanding or agreement was never carried into effect. There was some discussion between us as to a definite date when we would do that; we fixed the date of September 15th which was shortly before his death, about two weeks. He couldn't get off. He would have lost his position had he taken the day off. I bought my wedding ring I think the 1st of September. The ceremony was not

performed on September 15th. He told me any time after that he would take a day off regardless. Our plans were to go to some other county and be married. We thought we would not be lying or anything when we said that by telling people we were man and wife. We had no actual reasons to believe we were not man and wife, only worldly reasons.''

Although decedent had ''always'' acknowledged the claimant as his wife, she could not have possibly been his wife prior to September 21, 1926, the day she procured her divorce. It was evident that they intended to get married; that although they would live in the meanwhile as man and wife, there was still something in contemplation to complete the relationship. The marriage was to take place when the claimant had finished paying for the divorce papers. This proposed ceremony was never carried into effect. The date was selected, September 15, 1928. The claimant bought herself a wedding ring, but it was never used. Applying to this state of facts, the rule of law as clearly set out by our Brother KELLER in Murdock's Est., 92 Pa. Superior Ct. 275, and supported by numerous authorities, which are reviewed in the opinion, we must conclude ''that the claimant did not sustain the relation of wife to the decedent and acquired no rights as such and has no standing as his widow to claim the benefits of the Workmen's Compensation Law.'' We seek in vain in the testimony for any contract through words in the present tense. The marriage was in contemplation, but was to be entered into in the future. As stated in the above case, evidence of cohabitation and reputation will not suffice if the claimant herself proves that no valid marriage contract was actually entered into. ''Cohabitation and reputation are not marriage; they are but circumstances from which a marriage may be presumed, but such presumption may always be rebutted and will wholly disappear in the face of

proof that no marriage in fact had taken place." Mc-Devitt's Est., 280 Pa. 50; Edwards v. Enterprise Mfg. Co., 283 Pa. 420.

The order of the lower court is affirmed.