## Sullivan v. American Bridge Company

*Catherine A. Donahue* and *Frank H. Warner*, for plaintiff.
*William C. Bodine* and *Philip L. Leidy*, for defendant.

LAMBERTON, J., July 11, 1934.—On April 7, 1933, while in the course of his employment by defendant in the City of Philadelphia, John Sullivan received injuries from which he died the same day. Esther Sullivan presented a claim for compensation on her own behalf as widow and on behalf of her daughter by a former marriage, whom she claimed was a dependent of decedent. The claim was allowed by the referee. Defendant appealed to the Workmen's Compensation Board, and the board affirmed the award of the referee, making supplemental findings of fact. Defendant has appealed to this court. The only question at issue is whether claimant was in fact the wife of decedent. The pertinent facts are as follows:

On December 1, 1926, claimant and decedent, both being capable of contracting a lawful marriage, went to the City Hall in Camden for the purpose of securing a marriage license. They were informed that under the New Jersey law they could not be married for 48 hours. They then motored to Elkton, Md., intending to be married there, and upon applying for a marriage license met with some technical difficulty which would have involved delay. The following conversation then ensued between claimant and decedent, seated in an automobile on an Elkton street:

Decedent: "Will you marry me without ceremony?"
Claimant: "Yes."
Decedent: "Well, I am your husband."
Claimant: "Yes, and I am your wife."

They then returned to the home of decedent's married sister in Camden, N. J., and until decedent's death they cohabitated continuously as man and wife, except for a brief period when they were separated because decedent was unemployed. During this period of upwards of 6 years, they lived in Allentown, Pa., Red Bank, N. J., Baltimore, Md., and perhaps other places. During the 2 years immediately preceding decedent's death, they lived in the State of Pennsylvania. During all this time, decedent introduced claimant as his wife and named her

as his wife in various papers, and the couple generally enjoyed the reputation of married people. There was never any civil or religious ceremony.

It has many times been stated by our appellate courts that "marriage is a civil contract and does not require a particular form of solemnization by church or State officials to make it valid; but, as a contract, it must be evidenced by words in the present tense uttered with a view to establish the relations of husband and wife . . .": Krystkiewicz's Estate, 310 Pa. 298. This point has nowhere been better covered than in the opinion of Judge Ashman in Bergdoll's Estate, 7 Dist. R. 137, where he said: "If the parties, by their union, intend to create an honest marriage, the law will respect and enforce their purpose. This proposition is universal; the difficulty in its application is that different standards of proof have been adopted by which the intent is ascertained."

The vital thing is the intent of the parties, and the difficulty is in the proof. Naturally, the law is zealous to see that relations in reality meretricious shall not be given the sanctity of marriage and that words of a casual or indefinite nature shall not be construed as a marriage contract. Words in the future denote an engagement rather than a marriage. Words in the past constitute a recital rather than a contract. Words in the present evidencing an honest intent are required. This is in accord with the general law of contracts, that there must be a meeting of the minds.

Persons intending to contract a common-law marriage have no form to follow. Each case must therefore stand on its own feet. In the case before us, the words are clearly sufficient. The ground was laid in the future tense by the words of decedent: "Will you marry me without ceremony?" and the consent of the claimant, still in future, was evidenced by the reply: "Yes." This was immediately followed by words in the present tense: "Well, I am your husband"; and "Yes, and I am your wife."

Counsel for defendant argues that a common-law marriage is not valid in Maryland. This is true. He also argues that a marriage valid where contracted is valid everywhere, and a marriage invalid where contracted is invalid everywhere. This is the law, with certain exceptions not here in point. The words spoken in Elkton did not constitute a marriage in Maryland, and therefore did not constitute a marriage anywhere.

We then have the question of cohabitation, reputation, and acknowledgment in Pennsylvania and elsewhere. Counsel for defendant argues that the proof on this point is not sufficient to evidence a marital status. We disagree with him. But even were his argument justified by the testimony, he would be precluded from here asserting it, because at the hearing before the referee he said: "If the purpose of these witnesses is to prove reputation and cohabitation, it might be said that we have made or offered no defense on that point." And again: "Cohabitation, reputation, and acknowledgment have been admitted."

Counsel for defendant contends that cohabitation, reputation, and acknowledgment do not constitute a marriage but are merely evidence from which a prior marriage may be presumed, and that where the precise facts alleged to constitute a marriage are presented, the marriage must stand or fall on those facts and there can be no presumption. This is undoubtedly the law. Cohabitation, reputation, and acknowledgment never constitute a marriage, and in this case they are no evidence of a marriage: Murdock's Estate, 92 Pa. Superior Ct. 275.

It would seem hard that persons capable of marrying, attempting in good faith to marry, living together as man and wife for several years, always under the belief that they were in fact married, should, after the death of one of the

parties, be deemed by the law never to have been married. There will be cases in which such a result is unavoidable, but fortunately this is not one of them. Common-law marriages were invalid in Maryland but lawful in New Jersey and Pennsylvania. These parties spent most of their married life in Pennsylvania, and the balance of it, except for a short period, in New Jersey. The question under our law is that of intent. The difficulty is in regard to proof. As Judge Ashman said in Bergdoll's Estate, supra: " 'The living together of marriageable parties a single day as married, they meaning marriage and the law requiring only mutual consent, makes them husband and wife; . . ' "

We, therefore, hold that, under the circumstances here present the cohabitation of claimant and decedent in Pennsylvania constituted a common-law marriage in this State. At the time of cohabitation in this State, the law implied a present promise. The fact that they cohabited in Pennsylvania is admitted. The intent with which they so cohabited is proven by the preceding words spoken in Maryland: Marich's Estate, 8 D. & C. 645.

In this connection, the case of Travers v. Reinhardt, 205 U. S. 423, is exactly in point. In that case, a man and woman were ostensibly married by religious ceremony in Virginia. Subsequently, while living in Maryland, the wife found out that the marriage was void. Then, in the State of Maryland, they had a conversation which would have constituted a common-law marriage in New Jersey or Pennsylvania but not in Maryland. After 18 years of cohabitation, they moved to New Jersey and there lived as man and wife for a few months until the death of the husband. The Supreme Court said:

"We are of opinion that even if the alleged marriage would have been regarded as invalid in Virginia for want of license, had the parties remained there, and invalid in Maryland for want of a religious ceremony, had they remained in that State, it was to be deemed a valid marriage in New Jersey after James Travers and the woman Sophia, as husband and wife, took up their permanent residence there and lived together in that relation, continuously, in good faith, and openly, up to the death of Travers—being regarded by themselves and in the community as husband and wife. Their conduct towards each other in the eye of the public, while in New Jersey, taken in connection with their previous association, was equivalent, in law, to a declaration by each that they did and during their joint lives were to occupy the relation of husband and wife. Such a declaration was as effective to establish the status of marriage in New Jersey as if it had been made in words of the present tense after they became domiciled in that State."

See also Thewlis's Estate, 217 Pa. 307, and Hornbake v. Hornbake, 72 Pa. Superior Ct. 605.

*Order*

And now, to wit, July 11, 1934, the exceptions are overruled, and the appeal of defendant is dismissed. Judgment is entered against defendant, American Bridge Company, for the amounts awarded by the referee, as affirmed by the Workmen's Compensation Board, (a) in favor of Esther Sullivan, widow, and Mary Badel, minor stepdaughter, in the sum of $12.50 per week for 28-4/7 weeks, commencing April 14, 1933, and ending October 31, 1933, amounting to $357.14; (b) in favor of Esther Sullivan, widow, in the sum of $10 per week for 271-3/7 weeks, commencing October 31, 1933, and ending January 13, 1939, amounting to $2,714.29, a total judgment of $3,071.43; together with interest at the rate of 6 percent per annum on the amounts of compensation due at the time the first payment is actually made, in accordance with article IV, section 410, of the Workmen's Compensation Act of 1915, as amended.