## ZEMMICK, Estate of, In re.

Probate Court, Belmont County.

No. 44759.   Decided December 8th, 1945.

Kenneth G. Cooper, Bellaire, and Eugene M. Prager, Wheeling, W. Va., for Exceptor.

E. L. Matz, Bellaire, and John Cinque, Jr., Bellaire, for Administratrix.

## OPINION

By ALBRIGHT, J.

On August 23rd, 1944, Sarah Zemmick was appointed as Administratrix of the Estate of William Zemmick, Deceased, in the Probate Court of Belmont County, Ohio, and on August 28th, 1944, Mary Katharine Zemmick filed a petition

for the removal of Sarah Zemmick as such Administratrix. On October 10th, 1944, Sarah Zemmick filed an Inventory and Appraisement in said estate as such Administratrix. On October 20th, 1944, exceptions were filed to said inventory by Mary Katherine Zemmick, objecting to a Five Hundred Dollar set-off to Sarah Zemmick as exempt property under §10509-54 GC, and to a year's allowance of Twelve Hundred ($1200.00) Dollars to said Sarah Zemmick as the surviving spouse of said decedent under provisions of §10509-74 GC.

This matter came on for hearing before this Court on said exceptions and the petition for the removal of the Administratrix on the grounds that Sarah Zemmick was not the surviving spouse of William Zemmick, Deceased, both matters being heard jointly.

The Exceptor, Mary Katharine Zemmick, claims to be the surviving spouse of William Zemmick, Deceased, and therefore claims that Sarah Zemmick is not entitled to any part of the decedent's estate.

William Zemmick was one of sixty-six men, who lost their lives in the Powhatan Mine Disaster on July 5th, 1944 and a controversy then arose between these two women as to who was entitled to the body of said decedent, which was not recovered from the mine until several weeks after the disaster. A suit was filed in the Common Pleas Court of Belmont County by one of the parties but the case was never decided due to a settlement that was reached, which permitted the mother of the decedent to claim his body.

Mary Katharine Zemmick claims to be the legal surviving spouse of the decedent by reason of a ceremonial marriage performed August 12th, 1940 in Wellsburg, Brooke County, West Virginia. The Exceptor met the decedent during the latter part of May, 1940 in the Senate Cafe in Wheeling, West Virginia and on June 25th, 1940 said Exceptor filed an application for a marriage license for herself and William Zemmick in Wellsburg, West Virginia and the records of Brooke County, West Virginia show that they were married on August 12th, 1940. Thereafter Mary Katharine Zemmick and the decedent resided at Charleroi, Pennsylvania for a period of approximately one year and she then left him and returned to her home in Wheeling, West Virginia. On June 5th, 1944 the decedent filed a divorce action in the Circuit Court of Wheeling, West Virginia on the grounds of desertion, which suit was filed thirty days prior to his death and was never heard by the Court.

The Administratrix, Sarah Zemmick, claims to be the

surviving spouse of William Zemmick by reason of a common law marriage, which is alleged to have taken place at Avella, Pennsylvania during the year 1928 and continuing up until the date of the death of decedent. At the time the alleged common law marriage took place, the Administratrix was approximately fourteen years of age and the decedent nineteen years of age. They continued to live as husband and wife at Avella, Pennsylvania for a period of six years, approximately two years of which time they stayed at the home of the mother of the Administratrix and the other four years they resided in a separate home of their own. At the time the alleged common law marriage took place, the evidence shows that the decedent gave her a · wedding ring, which she has worn to the present time, and the decedent also procured another Party's marriage license, erased their names, and placed the name of the Administratrix and William Zemmick upon said marriage certificate. The evidence shows that during this time, they told others in the community that they were married and that others believed them to be husband and wife. In 1936 they left Avella and went to Coalport, Pennsylvania, thence back to Avella, and thence to Cokeburg, Pennsylvania, where they continued to live as husband and wife and it is alleged that the common law marriage had then · existed for a period of twelve years. Thereafter the Administratrix moved to the home of her parents at Bellaire, Ohio and then, after the ceremonial marriage took place between Mary Katharine Zemmick and William Zemmick, the decedent would spend the weekends with the Administratrix at her home in Bellaire, Ohio.

In 1942 the decedent obtained employment at the Powhatan Mining Company, Powhatan, Ohio and moved to the home of the Administratrix, who was living with her parents in Bellaire, Ohio, where they continued to live as husband and wife until about January 1st, 1944, at which time it is alleged that the parents of the Administratrix discovered that William Zemmick had been married to Mary Katharine Zemmick, the Exceptor. He then left the home of her parents and resided in the Purtiman home in Bellaire, Ohio until the day of his death.

The testimony shows that the decedent supported both women up until the time of his death. The Administratrix presents as evidence Application No. 11397 for participation in Relief Plan of the Bethlehem Steel Corporation dated September 20th, 1937 issued by the Industrial Collieries Corporation at Cokeburg, Washington County, Pennsylvania, on which the name of Sarah Zemmick appears as the wife of William

Zemmick. Exhibits introduced in the case show that the decedent gave the name of Sarah Zemmick, as his wife, when employed at the Powhatan Mine on December 7th, 1942. Among other exhibits for the Administratrix is a United States Savings Bond, Series E, issued August, 1943 and bearing No. Q276903236E in the sum of $25.00, payable to "William Zemmick, Route No. 1, Pinch Run, Bellaire, Ohio or Mrs. Sarah Zemmick". The Administratrix also presents an application for a loan from the City Loan of Martins Ferry, Ohio, dated February 11th, 1943, in which the decedent named Sarah Zemmick as his wife.

No children were born to either of said marriages.

The following questions of law and fact are involved and submitted to the Court for determination:

First: Did William Zemmick and Sarah Darnley Zemmick contract a marriage in the State of Pennsylvania prior to the ceremonial marriage of William Zemmick and Mary Katharine Zemmick, and, if so, did the transaction between them constitute a valid common law marriage under the laws of Pennsylvania?

Second: If a valid common law marriage was contracted, did said marriage continue without dissolution up to the time of the ceremonial marriage of the decedent with Mary Katharine Church Zemmick, and, if so, is the ceremonial marriage void?

An examination of the laws of Pennsylvania show that common law marriages are recognized in that state and are similar to the rule laid down by the Supreme Court of Ohio in the case of **Markley v Hudson, 143 Oh St, p 163,** as follows:

"A mutual agreement of marriage in praesenti made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, as a result of which the parties are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage." **Umbenhower v Labus, 85 Oh St, 238, 97 N. E., 832.**

"While such agreement to marry in praesenti must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and by showing that the parties declared themselves to be husband and wife; that they transacted business with each other and with third persons as husband and wife; that they lived together and cohabited as husband and wife for a series of years; and that they were so treated and reputed

in the community and circle in which they moved." **26 O Jur, 93, Sec 88;** 35 American Jurisprudence, 326, Section 220.

In the Case of Balanti v Stineman Coal & Coke Co. 131 Pa. Superior 347 (1938) 200 A 236, it is held: "This State recognizes the validity of common law marriages; but a marriage is necessary in all cases. The mere living together in the obstensible relation of husband and wife does not constitute a marriage. Cohabitation and reputation are not marriage; they are but circumstances from which a marriage may be presumed, and such presumption may always be rebutted and will wholly disappear in the fact of proof that no marriage in fact had taken place: McDevitt's Estate, 280 Pa. 50, 124 A. 294; Edwards v Enterprise Mfg. Co., 283 Pa., 420, 129 A. 449; Bisbing's Est., 266 Pa. 529, 109 A. 670; Murdock's Est., 92 Pa. Superior Ct. 275; Com. v Phillips, 83 Pa. Superior Ct. 213, 216; Com. v Bockes, 103 Pa. Superior Ct. 378, 381, 157 A. 214; Morris v McKeesport C. & C. Co., 99 Pa. Superior Ct. 112, 115. Marriage, in our law, is a civil contract, and does not require any particular form of solemnization before officers of church or state, but is entered into by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife; and if the testimony of the surviving party shows that there was no marriage, all the evidence on the subject of cohabitation and reputation is of no importance": Murdock's Est., supra, PP. 277-279; Com. v Stumpt, 53 Pa. 132; Tholey's App., 93 Pa. 36, 38; McLaughlin's Est., 314 Pa. 574, 172 A. 107.

To constitute a valid common law marriage it is only necessary that there should exist an agreement to by husband and wife followed by cohabitation as such. (Wandall's estate 29 Pa. Dist. 1132.)

Common law marriage requires an assumption of the parties of the rights and duties of the marital relationship in order to establish the existence and reality of the alleged consent thereto. That is to say there must be cohabitation of the parties, matrimonial in nature, professed and open such as will create some public recognition that their intentions were matrimonial. In re: Gallery 226 Pa. 469-75 Atlanta 672.

The consent of parties must be unequivocally evidenced, but it may be evidenced in any form or manner and verbally or by conduct alone and no particular form of expression is necessary. In re: Craig 273 Pa. 530; 117 A 221, Com. v Stump 53 Pa. 132, Hines Estate 7 Pa. Dist. 89, Guardian of Poor v Nathans 2 Brenest 149, Hantz v Sealy 6 Binn 405.

Cohabitation and reputation that the parties are married

do not constitute a legal marriage—not even a common law marriage—, but they are evidence from which a marriage may be found, if the circumstances are sufficiently strong and convincing to satisfy the triers of the fact. Caddy v Johnstown Firemen's Railroad Association, 129 Pa. Superior 494.

Ordinarily, the status of marriage continues during the joint lives of the parties or until divorce or annulment. This is true of a common law marriage. It has been said that the law seeks to make the marriage as permanent as possible without doing injustice. Thus, marriage cannot be revoked at the will of the parties. American Jurisprudence, Volume 35, Page 184, Section 7.

If the marriage status ever once comes into existence, it remains in full force thereafter until it is dissolved by law or death of one of the parties. Subsequent acts of concealment or maintenance of secrecy concerning the relationship between the parties is not sufficient to destroy a marital status after it has once been assumed in contemplation of law. American Law Reports, Page 223.

In jurisdictions recognizing common law marriage, the crime of bigamy may be based upon a prior common law marriage, the existence of which is shown by the required measure of proof. Cohabitation with a second spouse after the termination of the first marriage may operate as a common law marriage, and a person who marries again before such marriage has been dissolved by legal proceedings or terminated by death may be guilty of bigamy. American Jurisprudence, Volume 7, Section 11, Page 754.

A new affirmative agreement consciously entered into upon arriving at the age of consent is not necessary in order to validate a marriage; it may be ratified and validated by cohabitation as husband and wife after arriving at the age of consent. It has been held that the parties may ratify by voluntary cohabitation a marriage absolutely void because it was contracted while they were under the age of consent. American Jurisprudence 35, Section 106, Page 247.

Although, as shown in the previous section, a marriage by a person under the age of consent is void, unless ratified by the person after reaching the age of consent, in accordance with the general rule, such a marriage is of such effect that it may be ratified, and become valid, by cohabitation after the disability is removed, or by any other affirmative ratification, after coming of age. Thus, the wife may ratify the marriage, while living apart from her husband, by letters to her spouse, addressing him as her husband, and signing the letters by her Christian name and his surname. An affirmative ratification,

after reaching the age of consent, as distinguished from mere failure to dissent, renders the marriage irrevocable. The Marriage becomes as completely valid as though the party had reached her or his majority at the time the marriage took effect. **O Jur Vol 26, Sec 48, P 58.**

In re Crandall's Estate, 214 App. Div., 363, 366, 212 N. Y. S. 210, 212, it was held:

"It makes no difference whether such decision is based upon the theory that the courts will infer a consent, or whether it is found as a fact from the conduct of the parties in holding each other out as husband and wife and occupying that relationship. The parties, during all those years, intended to live in lawful wedlock. Courts will not be solicitous to find a way to nullify such intent and to make the relationship which the parties deemed lawful and sacred, unlawful and immoral."

A marriage without any formal ceremony is valid everywhere if the acts alleged to have created it took place in a state in which such a marriage is valid. American Law Institute, Section 123.

Where a valid common law marriage has been entered into in a jurisdiction which recognizes the validity of such a marriage, the general rule is that it will be recognized as valid in another jurisdiction, regardless of the rule which prevails in the latter jurisdiction. American Law Reports, 39, Page 559.

On October 19th, 1945 Mary Katharine Church Zemmick, the Exceptor filed a motion to re-open the hearing and to introduce additional testimony that was given by Sarah Darnley Zemmick at a hearing before E. F. Weaver, Claims Investigator of the Industrial Commission of Ohio at Bellaire, Ohio, on July 20th, 1944, in their Claim No. 1652165. The Court permitted the Exceptor to introduce the record and testimony given at said hearing and there is some variation in the testimony given by Sarah Zemmick at that time, and the testimony given by her at the hearing before this Court. However, the Court is of the opinion that Sarah Darnley Zemmick has fully established by proper evidence, all the essential elements of a common law marriage with William Zemmick, both in the States of Pennsylvania and Ohio, and that the common law marriage had not been terminated at the time of the ceremonial marriage to Mary Katharine Church Zemmick on August 12th, 1940. The common law marriage between William Zemmick and Sarah Darnley Zemmick having continued without interruption over a period of twelve years and without dissolution, prevented

William Zemmick from entering into a legal ceremonial Marriage with Mary Katharine Church Zemmick and, therefore, said ceremonial marriage becomes void.

It is, therefore, by the Court ordered that the exceptions to the inventory of said Administratrix be and are hereby dismissed at the costs of said Exceptor and that the petition for the removal of said Administratrix also be dismissed at the costs of said Mary Katharine Zemmick. Exceptions noted.